```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JULIO CANETE,
                                        Plaintiff,
                   -v-
METROPOLITAN TRANSPORTATION AUTHORITY,
et al.,
                                        Defendants.
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/2018

17 Civ. 3961 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Julio Canete brings this action under 42 U.S.C. § 1983; the First, Fourth, and Fourteenth Amendments of the Constitution; and various provisions of state law, against the Metropolitan Transportation Authority ("MTA"), the Triborough Bridge and Tunnel Authority ("TBTA"), tunnel officer Lawrence Ffrench, and unnamed supervisory defendants identified as the "Richard Roes." Canete's 11 claims include false arrest, false imprisonment, assault, battery, intentional and negligent infliction of emotional distress, and trespass. As a basis for his claims against MTA and TBTA, he alleges that these agencies had *de facto* policies, practices, customs, and/or usages that brought about violations of his constitutional rights.

Pending now are partial motions to dismiss by defendants MTA and TBTA and a motion to strike by defendant Ffrench. Defendants seek to dismiss: (1) all claims against MTA; (2) six claims against TBTA and the Richard Roes; and (3) any claims for punitive damages from MTA or TBTA. Ffrench seeks to strike the allegations regarding his purported history of "a significant

1

and habitual problem with alcohol abuse" and "habitually juvenile and immature" behavior. This decision resolves those motions.

I.  Background

   A.   Factual Background[1]

Around 7 p.m. on May 26, 2016, while crossing a street near the intersection of 92nd Street and Gatling Place in Brooklyn, New York, Canete was struck by a TBTA Operations Force police car. Dkt. 31 ("Amended Complaint" or "AC") ¶¶ 14–15. Canete was crossing lawfully, in a crosswalk; the TBTA vehicle was making an illegal left turn. *Id.* The incident left Canete severely injured and temporarily disoriented. *Id.* ¶ 16.

TBTA Officer Ffrench was driving the vehicle at the time of the accident. *Id.* ¶ 15. After striking Canete, Ffrench got out of his car and moved Canete, who was on the ground injured, into the backseat of the car. *Id.* ¶ 19. Ffrench then drove Canete over the Verrazano Narrows Bridge into Staten Island. *Id.* ¶ 21. He pulled into a parking lot and left Canete on the ground in the lot. *Id.* ¶ 24. Ffrench told Canete not to tell anyone about the incident and then drove away. *Id.* ¶¶ 25–26.

After Ffrench left, Canete called 911 from the parking lot. *Id.* ¶ 30. Emergency Medical Technicians and members of NYPD responded; Canete was placed in an ambulance. *Id.* ¶¶ 31–32. Ffrench, whom Canete believes heard police radio calls about Canete, returned to the scene, entered the ambulance, and again told Canete not to tell anyone about the accident. *Id.* ¶¶ 33–35.

---

[1] The facts related herein are drawn from the Amended Complaint and attached exhibits. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the Amended Complaint as true and draws all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2

Canete was taken to Staten Island University Hospital, where he was treated for his severe injuries. ¶ 36. He continues to suffer physical pain from these injuries. *Id.* ¶ 37. They have prevented Canete from working his usual job and have caused economic loss. *Id.* ¶ 40.

The Amended Complaint also alleges that Ffrench had a history of alcohol abuse and immature behavior. *Id.* ¶ 41. It attaches Facebook postings of Ffrench where he poses with or makes statements about alcohol. *See* Dkt. 31-1.

### B. Procedural History

On May 25, 2017, Canete filed an initial Complaint against Ffrench, the MTA, TBTA, and the Richard Roes. Dkt. 1. On June 28, 2017, MTA and TBTA filed an Answer, and brought a crossclaim against Ffrench. Dkt. 12.

On October 5, 2017, Canete filed the AC against the same defendants. Dkt. 31. Canete brings 11 claims:

- Count One: deprivation of rights under 42 U.S.C. § 1983 by Ffrench;
- Count Two: deprivation of rights under 42 U.S.C. § 1983 by Richard Roes due to a failure to train and supervise subordinates (including, presumably, Ffrench);
- Count Three: deprivation of rights under 42 U.S.C. § 1983 by MTA and TBTA for having *de facto* policies, practices, customs, and/or usages that led to the violation of constitutional rights;[2]
- Count Four: *respondeat superior* liability on the part of MTA and TBTA for state law violations;
- Counts Five through Eight: state law assault, battery, false arrest, false imprisonment, trespass, and intentional and negligent infliction of emotional distress claims against Ffrench;
- Count Nine: state law negligence claims against all defendants;
- Count Ten: state law negligent hiring, screening, retention, supervision, and training claims against MTA and TBTA;
- Count Eleven: violation of the New York Constitution by all defendants.

*See* AC ¶¶ 44–80.

---

[2] Although Count Three does not reference 42 U.S.C. § 1983, it is apparent and undisputed that Canete there sues under that statute.

3

On October 23, 2017, MTA and TBTA filed a partial motion to dismiss the AC, Dkt. 32, and a memorandum of law in support. Dkt. 32-8 ("Def. Br."). They seek to dismiss all claims against MTA, arguing it is an improper defendant. *Id.* at 6. They further seek to dismiss the Second, Third, Tenth, and Eleventh Causes of Action in their entirety; the Fourth and Ninth Causes of action to the extent that they seek to hold MTA and TBTA liable for offenses outside of Canete's earlier Notice of Claim; and all claims for punitive damages. Dkt. 32.

On November 27, 2017, Canete filed a memorandum of law in opposition to the motion to dismiss. Dkt. 42 ("Pl. Br."). On December 13, 2017, MTA and TBTA filed a reply in further support of the motion to dismiss. Dkt. 46 ("Def. Reply").

On October 24, 2017, Ffrench filed his motion to strike. Dkt. 34. On November 3, 2017, Canete filed his opposition. Dkt. 39. On November 11, 2017, Ffrench filed his reply. Dkt. 40.

## II.   Applicable Legal Standards

### A.   Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v.*

4

5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### B. Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Unless it is clear that the portion of the pleading has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant, the complaint should remain intact." *FRA S. p. A. v. Surg-O-Flex of Am., Inc.*, 415 F. Supp. 421, 427 (S.D.N.Y. 1976); *see also Acco, Ltd. v. Rich Kids Jean Corp.*, No. 15 CIV. 7425 (JSR), 2016 WL 3144053, at *2 (S.D.N.Y. Apr. 11, 2016) (citing *FRA S. p. A.*)

### III. Discussion

Defendants seek dismissal of: (1) all claims against MTA, on the grounds that MTA is not a proper defendant to this action; (2) all claims of *respondeat superior* liability against MTA and/or TBTA, on the grounds that Canete fails to state a claim of a governmental policy or custom, as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and (3) all claims arising from injuries incurred post-accident, on the grounds that those claims were not

5

properly preserved in Canete's notice of claim. The Court addresses these issues in turn, followed by a discussion of Ffrench's motion to strike.

### A. The Claims Against MTA

MTA seeks to dismiss all claims against it, arguing that MTA is not a proper defendant to this action. Def. Br. at 6. MTA claims that it owed no duty of care to Canete as a matter of law, because Ffrench was employed only by the TBTA. *Id.* at 6–7. The AC alleges the entities are interrelated affiliates, AC ¶¶ 8–11, and that discovery related to TBTA and MTA should be permitted to clarify which is responsible for Ffrench conduct. Pl. Br. at 4–5.

At this pleadings stage, the Court sides with Canete. To be held liable under § 1983, the government entity or employee must have owed a duty to the plaintiff. *See Vega v. Fox*, 457 F. Supp. 2d 172 (S.D.N.Y. 2006); *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222 (2001). The Government represents that the MTA does not set the policies and customs applicable to Ffrench or employ him and thus it owed no duty as a matter of law to him. The Government bases its claim that the MTA's responsibilities, and therefore duties, are limited to financing and planning on several cases: *New York Civil Liberties Union v. New York City Trans. Auth.*, 675 F. Supp. 2d 411, 413 n.1 (S.D.N.Y. 2009); *Puzhayeva v. City of New York*, 58 N.Y.S.3d 92 (N.Y. App. Div. 2017); *Delacruz v. Metropolitan Transp. Auth.*, 45 A.D.3d 482 (1st Dept. 2007). But these are inapposite. All involved dismissals of claims against the MTA on the grounds that the claims at issue were properly brought against the New York City Transit Authority ("NYCTA"). None involve claims against the TBTA. The Court has found no comparable case to this in which § 1983 claims against the MTA have been dismissed on the pleadings on the theory that only the TBTA can be accountable for the actions of a particular employee. And the NYCTA and TBTA cannot be treated as coextensive. While both are affiliates of the MTA, they have different legal

relationships to it. Further, significant here, the MTA is empowered by N.Y. Pub. Auth. Law § 1266-h to create its own police force, whereas the TBTA does not appear to have equivalent authority.

In the end, the question is factual: Whether, in the area of transit law enforcement, the MTA's responsibilities are necessarily limited to financing and planning; or whether, as Canete claims, the MTA was involved in the employment and training of Ffrench so as, alongside the TBTA, to have potential legal responsibility for his actions. Assessment of this question, and therefore whether MTA is a proper defendant, must await discovery. *Cf. Feliz v. Triborough Bridge & Tunnel Auth.*, 2017 slip op. 32767 (S.D.N.Y. Dec. 5, 2017) (dismissing case against MTA at summary judgment); *Bell v. Metro. Transp. Auth., Triborough Bridge & Tunnel Auth.*, No. 12 CIV. 1235 AKH, 2013 WL 8112461, at *5 (S.D.N.Y. Nov. 1, 2013) (same). The Court expects that the facts pertinent to this issue can be developed through tightly limited discovery.

### B. Claim Three: *Monell* Claims Against TBTA and MTA

In its third claim, the AC alleges that the TBTA and MTA violated 42 U.S.C. § 1983 by having *de facto* policies, practices, customs, and/or usages that directly led to the violation of Canete's constitutional rights. *Id.* ¶¶ 51–55. Section 1983 provides redress for a deprivation of constitutional rights by persons acting under color of state law. To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57 (1978). Local government units, including public benefit corporations such as TBTA, qualify as persons under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Estes-El v.*

7

*State Dep't of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bureau*, No. 95 CIV. 3454 (JFK), 1997 WL 342481, at *4 (S.D.N.Y. June 23, 1997).

Municipal liability in a § 1983 action, however, may not be based on a theory of *respondeat superior*. Thus, a public entity cannot be found liable for an employee's actions solely because it employed a tortfeasor whose conduct breached another's constitutional rights. *Id.* at 691. Rather, to hold a municipality liable under § 1983 for the violation of constitutional rights by an employee, the plaintiff must establish an official policy or custom that directly caused that violation. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). As the Second Circuit has put the point: "[C]onstitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights, and therefore the employer-employee relationship is in itself insufficient to establish the necessary causation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) (Sotomayor, J.) (internal quotation marks and citation omitted)).

To satisfy this standard:

> A plaintiff can establish the existence of a policy or custom by demonstrating: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Calderon v. City of New York*, 138 F. Supp. 3d 593, 611–12, No. 14 Civ. 1082 (PAE), 2015 WL 5802843, at *14 (S.D.N.Y. Oct. 5, 2015), *reconsideration in part granted on other grounds*, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015); *Garcia v. City of New York*, No. 15 CIV. 7470

8

(ER), 2017 WL 1169640, at *9 (S.D.N.Y. Mar. 28, 2017); *Shaheed v. City of New York*, No. 14 CIV. 7424 (PAE), 2017 WL 3055040, at *7 (S.D.N.Y. July 17, 2017).

The AC's *Monell* allegations, read liberally, attempt to implicate the latter three modes by which a policy or custom can be established. Specifically, Canete alleges that the TBTA had *de facto* policies, practices, customs, and/or usages of: (1) "failing to properly train, screen, supervise, or discipline employees and law enforcement officers (including but not limited to, concerning how to handle vehicular accidents specifically and how to handle circumstances where they have either intentionally or unintentionally done something improper and / or caused harm or damage to persons or property generally);" (2) "failing to inform supervisors of their need to train, screen, supervise, or discipline" employees; (3) "encouraging and/or tacitly sanctioning the cover-up of law enforcement officers' misconduct;" (4) "tolerating the abuse of alcohol by their employees, and of otherwise tolerating behavior demonstrating their employees' immaturity and judgmental unfitness to serve as law enforcement officers;" and (5) "failing to sufficiently monitor their employees' behavior and activities in order to prevent dangerous, immature, and / or judgmentally unfit individuals from being employed as law enforcement officers within their ranks." AC ¶¶ 51–54.

The Court addresses the AC's failure to train allegations first. To give rise to liability under § 1983 on such a theory, a failure to train must be the product of "deliberate indifference to the constitutional rights of citizens." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). A plaintiff must show that: (1) "policymaker knows 'to a moral certainty' that her employees will confront a given situation," (2) "the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation" and (3) "the

9

plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 297–98 (2d Cir. 1992). At the pleading stage, allegations of a single incident are insufficient to plead the existence of an infirm policy as to training unless "the unconstitutional consequences of failing to train could be so patently obvious that a city should be liable" pursuant to § 1983 and that violation of constitutional rights must be a 'highly predictable consequence' of the failure to train." *Connick v. Thompson*, 563 U.S. 51, 63–64 (2011) (discussing standard in context of jury verdict); *Edrei v. City of New York*, 254 F. Supp. 3d 565, 579 (S.D.N.Y. 2017) (explaining application at a motion to dismiss); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 391 (S.D.N.Y. 2013) (same).

Here, Canete has not alleged any other on-the-job incident similar—or even dissimilar— to his.[3] He therefore appears to anchor his theory of a failure to train or supervise on the single incident affecting him. But, as pled, there was nothing about the incident involving Ffrench that made it a highly predictable consequence of a failure to train or supervise.[4] On the contrary, Ffrench's alleged behavior was idiosyncratic, bizarre, and transparently illegal. As Canete synopsizes the allegations in the AC: "[Ffrench] kidnap[ped] Plaintiff and [drove] him across a bridge, dump[ed] him in a severely injured condition in a parking lot and [drove] away, and twice attempt[ed] to intimidate Plaintiff—including returning to the location where he had dumped Plaintiff and intimidating him inside of the ambulance that arrived after Plaintiff was

---

[3] For this reason, *Castilla v. City of New York,* No. 09-cv-5446 (SHS), 2012 WL 3871517 (S.D.N.Y. Sept. 6, 2012), on which Canete relies, is distinguishable. The plaintiff there alleged that similar incidents had occurred before hers. *Id.* at *3.

[4] Canete appears to recognize the need to adequately so plead, in that he cites *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 409-410 (1997), which holds that evidence of a single violation of federal rights, if accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability. *See* Pl. Br. at 13.

able to call 911—into not reporting that it was Ffrench who struck him with a car." Pl. Br. at 11. There is no reason to attribute the conduct alleged on Ffrench's part to a deficiency in training or supervision. On the contrary, the opposite inference is compelling: The illegality of kidnapping and dumping far away an accident victim would appear sufficiently obvious as to not require training or suggest that its occurrence was inherently indicative of a lapse in training. *Compare Connick*, 131 S. Ct. at 1361 (noting that, in the absence of training, there was no way for novice officers to learn about constitutional constraints on the use of deadly force).

Canete separately notes that Ffrench, as alleged, had demonstrated problems with alcohol use and reckless conduct. The implication is that his behavior on the day in question was the product of alcohol-driven recurrent behavior which TBTA had failed to redress through supervision. But for multiple reasons, the factual basis for this theory is wanting. The AC does not adequately plead that Ffrench was driving under the influence of alcohol on the day in question. It does not allege, for example, that Ffrench smelled of alcohol, slurred his words, appeared not to be alert, or was unsteady on his feet. On the facts alleged, Canete was well-positioned to observe these badges of alcohol abuse.[5] Further, as its basis for asserting that the TBTA and MTA knew of Ffrench's propensities, the AC relies on Ffrench's Facebook posts, which it attaches. But the AC does not allege that the TBTA or MTA were aware of these posts. And even if they were, these posts do not reference or fairly suggest either on-the-job drinking or drinking and driving (whether on- or off-duty).[6] The AC's claims of Ffrench's ostensibly known "immaturity" are even more vaguely and conclusorily pled.

---

[5] The AC relies instead on the conclusory claim that "on information and belief" Ffrench was either under the direct influence of alcohol or had his reflexes and judgment impaired from alcohol abuse. AC ¶ 43.

[6] The closest Ffrench gets is the following Facebook post from 2012: "Almost got into 3 car accident with tractor trailer and illegal taxi, people upset at me and tired, aggravated and broke.

11

The AC therefore does not plausibly allege that the incident involving Canete and Ffrench resulted from a lapse in training as to the appropriate way to handle a vehicular incident involving an officer or from a lapse in supervision of the officer in question, Ffrench. Thus, the AC's allegations of a failure to train cannot support *Monell* liability.

Next the Court addresses the AC's related claims that the TBTA and MTA had a *de facto* policy of failing to monitor employees' behavior. A failure to monitor or supervise must be the alleged to arise from "deliberate indifference to the constitutional rights of citizens" to give rise to liability under § 1983. *Walker*, 974 F.2d at 297. Deliberate indifference may be established where the "the need for more or better supervision to protect against constitutional violations was obvious," but the allegedly negligent supervisor "made no meaningful attempt to forestall or prevent the unconstitutional conduct." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (Sotomayor, J.). For essentially the same reasons as his failure to train claims, the AC's failure to monitor claims also fail. It does not allege any prior or remotely similar bad acts or any prior conduct putting the TBTA or MTA on notice of problematic behavior suggesting a need for intervention. *See supra* p. 11.

Finally, as to the AC's claims that the TBTA and MTA had a *de facto* policy of encouraging or tacitly sanctioning the cover-up of officers' misconduct and of tolerating the abuse of alcohol and otherwise immature and unfit behavior of employees; these labels and legal conclusions are unsupported by any factual averments. The AC does not allege any facts plausibly suggesting that: (1) the TBTA or MTA tolerated, sanctioned, or covered up Ffrench's behavior on the day in question, or (2) tolerated, sanctioned, or covered up similar conduct in the

---

Need to de-stress and GTL." Even assuming, as Canete claims, that "GTL" stands for "Gym, tan, liquor," rather than "gym, tan, laundry," this post does not suggest that Canete had been under the influence at the time of this near-accident.

past, let alone (3) that such complicity was by individuals with "final policy making authority" or pursuant to a "practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." *Shaheed v. City of New York*, 2017 WL 3055040, at *7. Like other courts that have dismissed *Monell* claims based on conclusory or threadbare claims against municipalities, *see, e.g., Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535–37 (S.D.N.Y. 2012); *Moore v. City of New York*, No. 08–CV–8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010); *Allen v. Antal*, 665 F. App'x 9, 14 (2d Cir. 2016), the Court dismisses the § 1983 claims (i.e., Count Three) against the TBTA and MTA.

### C. Claims Four And Nine: *Respondeat Superior* Liability

Canete's fourth claim seeks to hold TBTA liable for state law violations under a theory of *respondeat superior*. AC ¶¶ 56–58. Defendants seek to dismiss this claim to the extent that it can be read to would impose *respondeat superior* liability for violations of § 1983 claims. Def. Br. at 12. Defendants make a similar argument as to the AC's ninth claim, for negligence. *Id.*

For the reasons reviewed above, defendants are correct as a matter of law that *respondeat superior* liability is not available for § 1983 claims. *See Monell*, 436 U.S. at 691; *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Outlaw v. City of Hartford*, Nos. 16-480(L), 16-635(XAP), 2018 WL 1177403, at *16 (2d Cir. Mar. 7, 2018). But that principle is not implicated by the AC's fourth or ninth claims, which explicitly pursue violations only of state law, not § 1983. The Court thus denies defendants' motion on this point as based on a misreading of the AC.

### D. Claim Two: Constitutional Claims Against Supervisory Defendants

The AC's second claim seeks to hold unnamed supervisory defendants ("Richard Roes") liable under § 1983 for failing to "remedy the wrongs committed by their subordinates" and to

13

"train, supervise, and discipline Ffrench." AC ¶¶ 48–49. It alleges that these lapses led to the violation of Canete's rights under the First, Fourth and Fourteenth amendments. *Id.*

"It is well settled, however, that the doctrine of *respondeat superior* standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003). Instead, "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct is required." *Id.* "The personal involvement of a supervisory defendant may be shown by evidence that . . . the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong . . . [or] the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)).[7]

"[G]ross negligence denotes a higher degree of culpability than mere negligence." *Raspardo v. Carlone*, 770 F.3d at 116. "It is the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of . . . harm to another and deliberately acts or

---

[7] There has been some suggestion that the Supreme Court's opinion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), raised the standard for "personal involvement," *id.* at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); § 7.19 SUPERVISORY OFFICIALS' LIABILITY, SNETLCD § 7.19 ("In the author's view those standards only survive *Iqbal* to the extent that they authorize § 1983 liability against a supervisory official on the basis of the supervisor's own unconstitutional conduct or, ar least, conduct that set the unconstitutional wheels in motion."). However, the Second Circuit has repeatedly declined to reach this question, and instead approved the dismissal of claims based on the old standard set out in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir.1995). *See Grullon v. City of New Haven*, 720 F.3d 133 at 139 (2d Cir. 2013) ("We need not reach *Iqbal*'s impact . . . in this case, for Grullon's initial complaint did not adequately plead the Warden's personal involvement even under *Colon*."); *Raspardo v. Carlone*, 770 F.3d at 124 ("We have not yet determined the contours of the supervisory liability test, including the gross negligence prong, after Iqbal . . . [and] need not decide this question here because . . . Gagliardi did not act with gross negligence in his supervision of Carlone, and the other tests for supervisory liability are not satisfied."). The Court does the same here.

fails to act in conscious disregard or indifference to that risk." *Id.* Here, however, the AC lacks any allegations that supervisors were negligent (let alone grossly so) in advance of the incident involving Canete or that, afterwards, they were notified of it and were failed to take action (let alone in a way bespeaking gross negligence). On the contrary, the AC lacks any allegations about the unnamed supervisors' knowledge of Ffrench's ostensible propensity for reckless or lawless behavior. The Court, accordingly, dismisses the AC's second cause of action.

### E. Claims Nine and Eleven: Claims Not Preserved by a Notice of Claim

The TBTA and MTA seek the partial dismissal of the AC's ninth claim, for negligence, on the ground that it was not preserved in Canetes notice of claim. On the same grounds, they seek dismissal of the AC's 11th claim, for violations of Article I of the New York Constitution, which asserts violations of his state constitutional rights to a grand jury, to free expression, and to be free from unreasonable searches, seizures, and interceptions. AC ¶¶ 78–80.

Federal courts enforce state notice-of-claim statutes applicable to state law claims. *See Felder v. Casey*, 487 U.S. 131, 151 (1988); *Parise v. New York City Dep't of Sanitation*, 306 F. App'x 695, 697 (2d Cir. 2009). Under New York law, a suit can only be brought against a municipal corporation if a notice of claim, complying with the New York General Municipal Law § 50-e, is served. *Id.* These requirements cover cases against the TBTA and MTA. N.Y. Pub. Auth. Law § 569-a; *id.* § 1276. Specifically, a notice of claim must set forth the nature of the claim and the time, place, and manner in which the claim arose. N.Y. Gen. Mun. Law § 50-e. While the notice need not recite these matters "with literal nicety of exactness," the notice must contain enough information to alert the municipality of the time, place, and nature of the incident with adequate detail to enable an investigation to occur. *Brown v. City of New York*, 740 N.E.2d 1078, 1080 (2000) (citing *Purdy v. City of New York*, 86 N.E. 560, 561 (1908)). A

plaintiff cannot interpose causes of action that were not directly or indirectly referred to in the notice of claim. *Garcia v. O'Keefe*, 825 N.Y.S.2d 38, 39 (1st Dep't 2006).

The AC's notice of claim alerted defendants that he had been struck and severely injured by a TBTA vehicle, driven by Ffrench, at the intersection of 92nd Street and Gatling Place in Brooklyn on May 26, 2016 at 7:30 p.m. Dkt. 32-2 ("Notice of Claim") at 2. It recited, among other details, that "[t]he accident . . . was due to the negligence, carelessness and reckless of the MTA Bridges and Tunnels, Triborough Bridge and Tunnel Authority." *Id.* at 2. It details both Canete's injuries and the ways in which "Defendants, their agents, servants and/or employees" were negligent. *Id.* That information was enough to enable TBTA to investigate the incident, *Brown*, 740 N.E.2d at 1080, and fairly anticipated a negligence claim under state law. To the extent that the injuries listed in the AC's ninth claim from the accident are recounted in the notice of claim, the claim for negligence was properly preserved.

The notice of claim, however, did not recount Ffrench's alleged post-accident actions, including placing of Canete in his car, driving across the Verrazano Narrows Bridge, leaving Canete in a parking lot, and telling Canete to keep quiet about the incident. *See* Notice of Claim at 2. The notice instead would have led defendants to believe that all of Canete's claims arose from the physical collision and the injuries arising from the motor vehicle accident itself. The notice gave no indication that unlawful conduct ensued thereafter and therefore did not preserve any claims based on such conduct. To the extent that the injuries listed in the AC's ninth claim arose from conduct post-dating the car accident, they are therefore not preserved and Canete may not pursue them under the auspices of his negligence claim.

As to the AC's 11th claim, grounded in an admixture of state constitutional provisions, the factual basis for these claims is elusive. It appears to the Court that these claims arise not

from the car accident, but from the ensuing conduct alleged on Ffrench's part, as none of the conduct alleged in connection with the accident has any coherent nexus to such claims. As such, these claims were not preserved, in that the notice of claim did not recount any post-accident conduct as a basis for relief. In any event, to the extent Canete's intention in the AC was to base these state constitutional claims on the accident itself, the notice of claim was silent as to these non-intuitive theories of liability, and this precludes these claims as outside the notice that Canete provided. "The fact that these alleged causes of action arose out of the same incident is not pivotal; rather, the nature of the claim and the theory of liability are determinative." *Wanczowski v. City of New York*, 588 N.Y.S.2d 1011 (1992) (denying motion to amend notice of claim where "theories of false arrest, false imprisonment, malicious prosecution and conspiracy were not referred to either directly or indirectly in the notice of claim"); *see also Garcia*, 825 N.Y.S.2d at 39 (declining to infer false arrest as a theory of liability based on "plaintiff's general assertions of negligence, carelessness and recklessness.") (internal quotation omitted). The Court therefore dismisses Canete's eleventh claim in its entirety against the municipal defendants.

### F. Claim Ten: Negligent Hiring, Screening, Retention, Supervision, and Training

TBTA next moves to dismiss the AC's tenth claim, brought against it and MTA for negligent hiring, screening, retention, supervision, and training. Such a claim requires a plaintiff to show all standard elements of negligence and "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." *Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (quoting *Ehrens*

17

*v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). The focus of TBTA's motion to dismiss is on whether the AC adequately pleads that TBTA knew or should have known in advance of Ffrench's propensity for the May 26 conduct that caused Canete's injuries.

The AC does not allege that Ffrench had a propensity for reckless driving or attempting to cover-up accidents. Rather, as noted, it alleges that Ffrench had a "significant and habitual problem with alcohol abuse." AC ¶ 41. But it does not allege that TBTA was ever aware of its employee's problem, or had other concrete evidence indicating a lack of fitness for his job. Further, as noted, to the extent that the AC relies on Ffrench's public Facebook posts, these do not reveal such a problem, and the AC does not adequately allege notice of these posts on the part of the TBTA. Because the AC does not allege facts supporting the inference that TBTA knew or should have known that Ffrench had a propensity to engage in behavior consistent with the incident involving Canete, the Court dismisses the AC's tenth claim.

### G. Punitive Damages

The AC seeks punitive damages. AC at 17. Canete does not seek such damages directly against the MTA and TBTA, but implies that the municipal defendants could be liable, under *respondeat superior*, for punitive damages imposed against French based on his state law claims. Def. Br. at 15. That claim is precluded as a matter of law. Much as federal law bars imposing punitive damages on a municipality for § 1983 claims, *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), under New York law, municipalities may not be held liable for punitive damages on state law claims unless a statute has "clearly, expressly and specifically" waived sovereign immunity. *See Krohn v. New York City Police Dep't*, 811 N.E.3d 329, 338 (N.Y. 2004); *see also Sharapata v. Town of Islip*, 437 N.E.2d 1104, 1105–07 (N.Y. 1982)

(plaintiff cannot recover punitive damages from municipality on negligence claim). Canete has not identified any such wavier here.

### H. Motion to Strike

The Court finally addresses Ffrench's motion to strike the allegations about his alcohol abuse. Canete defends these allegations as relevant to his claims against the TBTA and MTA of negligent hiring and retention. The Court, however, has struck those claims, including on the grounds that it is ill-pled that these entities knew or should have known of Canete's alleged issues with alcohol.

This is, therefore, a rare case in a motion to strike is meritorious. To be sure, "[m]otions to strike are disfavored and are generally granted only when the challenged matter is scandalous. A scandalous allegation is one that reflects unnecessarily on the defendant's moral character . . . ." *Cabble v. Rollieson*, No. 04-CV-9413 (LTS)(FM), 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006) (Mass, M.J.). The allegations here, however, are of such a nature, and, in light of this ruling, are disconnected from any well-pled claim. The Court therefore orders that they be struck.

## CONCLUSION

For the foregoing reasons, the Court denies the MTA's motion to dismiss it as a proper party. The Court, however, grants the defendants' motion to dismiss claims two, three, nine, ten, and eleven and Canete's request for punitive damages. The Court also directs that paragraphs 41 to 43 and Exhibit 1 to the Amended Complaint be struck. The parties are directed to submit a revised case management plan that contemplates separate deadlines for discovery on the issue of the MTA's relationship to the TBTA.

The Clerk of the Court is respectfully directed to terminate the motions pending at Dkts. 24, 32, and 34.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 20, 2018
      New York, New York